```
                 UNITED STATES DISTRICT COURT
                  DISTRICT OF MASSACHUSETTS
                                   )
SERGIO CRUZ                        )
                                   )
        v.                         )   CIVIL NO. 05-10610-NG
                                   )
UNITED STATES OF AMERICA           )
                                   )
```

**GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION
<u>UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE OR CORRECT SENTENCE</u>**

The United States, by and through its attorneys, United States Attorney Michael J. Sullivan and Assistant U.S. Attorney William D. Weinreb, respectfully submits this opposition to defendant Sergio Cruz's motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence on grounds of ineffective assistance of counsel. The motion should be summarily denied because Cruz has not shown, and cannot show, that trial counsel was ineffective by failing to pursue the Safety Valve on Cruz's behalf.

**BACKGROUND**

On August 1, 2002, Sergio Cruz and nine others were charged by indictment with conspiracy to distribute, and to possess with intent to distribute, heroin, cocaine, and MDMA. <u>United States v. Aparicio Gutierrez-Sanchez et al.</u>, Crim. No. 02-10335-NG. Cruz retained Thomas J. Kerner, Esq., to represent him. On October 20, 2003, after plea negotiations proved unsuccessful, Cruz pleaded guilty without a plea agreement. The government asserted at the Rule 11 hearing that Cruz and his girlfriend, Sol

Rivera, recruited and supervised a drug courier, Lorenzo Ozoria, who was supposed to smuggle a kilogram of heroin into the United States. (Ozoria actually managed to smuggl only 444.2 grams into the U.S.). Cruz admitted conspiring with Gutierrez-Sanchez, Rivera and Ozoria to bring heroin into the United States but asserted that he was responsible for only 444.2 grams of heroin rather than an entire kilogram; he also asserted that Gutierrez-Sanchez, rather than he (Cruz), was the one who recruited and supervised Ozoria. The Court accepted Cruz's guilty plea and scheduled a sentencing hearing.

The Presentence Report held Cruz accountable for an entire kilogram of heroin, resulting in a base offense level of 32. The PSR also (1) added three levels for role in the offense, on the ground that Cruz recruited and helped supervise Ozoria; (2) added another two levels for obstruction of justice, because Cruz had provided a false name to a pretrial services officer when first interviewed; and (3) refused to subtract any levels for acceptance of responsibility, because Cruz had obstructed justice. These calculations resulted in a total offense level of 37, which, in conjunction with Cruz's Criminal History Category of I, yielded a sentencing range of 210-262 months.

In a letter dated May 25, 2004, Mr. Kerner filed 20 objections to the Presentence Report. He challenged, among other things, the finding that Cruz was responsible for one kilogram of

heroin rather than 444.2 grams; the finding that Cruz was a manager or supervisor; the finding that Cruz had obstructed justice; and the finding that Cruz had not accepted responsibility.  The Probation Officer rejected all of these challenges and made no changes to the PSR.

On June 7, 2004, Mr. Kerner filed a six-page sentencing memorandum on Cruz's behalf.  The memorandum reiterated his objections to the PSR and provided factual and legal support for them.

All defendants were brought in on June 17, 2004, for a sentencing hearing that lasted two full afternoons.  The bulk of the hearing was spent on arguments concerning the proper drug weight and role in the offense attributable to Sergio Cruz and Sol Rivera.  At the hearing's conclusion, the Court accepted all of Mr. Kerner's arguments and rejected the contrary positions of the United States and the U.S. Probation Office, i.e. it found that Cruz was accountable for only 444 grams of heroin, that Cruz was not a manager or supervisor, that Cruz did not obstruct justice, and that Cruz deserved a downward adjustment for acceptance of responsibility.

The Court ultimately determined that Cruz's total offense level was 25 and his guidelines sentencing range was 57-71 months.  The Court also found, however, that Cruz was subject to a minimum mandatory 60-month sentence pursuant to 21 U.S.C. §

841(b)(1)(B) because he was accountable for 100 grams or more of heroin.

Before imposing sentence, the Court asked the parties whether there was any issue as to the Safety Valve in Cruz's case. To the best of government counsel's recollection, Mr. Kerner stated that the defense had decided not to pursue that option; government counsel confirmed that the parties had discussed the Safety Valve and that it was the government's understanding that the defense had decided that it would not be in Cruz's best interests to pursue it. Cruz was given an opportunity to speak but did not contradict either of these statements or even mention the Safety Valve. Accordingly, the Court sentenced Cruz to the minimum-mandatory term of 60 months' imprisonment.

Cruz has now filed a motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence. He claims that he was eligible for the Safety Valve and received ineffective assistance of counsel at sentencing because Mr. Kerner failed to pursue the Safety Valve on his behalf. Although Cruz never gave a so-called Safety Valve proffer, as required by 18 U.S.C. § 3553(f)(5) and USSG §5C1.2(a)(5), he presumably claims that he would have given a truthful and complete one but for Mr. Kerner's failure to pursue the matter. He also claims (correctly) that if he had received the benefit of the Safety Valve there would have

been no minimum mandatory sentence and his total offense level would have been 23 rather than 25, resulting in a sentencing range of 46-57 months.

Cruz's motion should be summarily denied for two independent reasons. First, as set forth below, it is clear that Mr. Kerner made a strategic decision not to pursue the Safety Valve on Cruz's behalf; Cruz himself has offered no evidence to the contrary, let alone evidence that would meet his heavy burden of proof on the issue. Second, the evidence shows that Mr. Cruz would likely have received a *higher sentence* if he had pursued the Safety Valve, meaning that, even if Mr. Kerner had simply dropped the ball on the Safety Valve issue, Cruz still could not show that he was prejudiced.

## **ARGUMENT**

A.  The Safety Valve

The Safety Valve is the popular name for the provision set forth at 18 U.S.C. § 3553(f)(1)-(5). It is incorporated into the sentencing guidelines by USSG §5C1.2(a)(1)-(5). It provides that, in certain drug cases, "the court shall impose a sentence pursuant to the [sentencing guidelines] without regard to any statutory minimum sentence" if five requirements are met. The fifth requirement is that, "not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence that the defendant has

concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan." USSG §5C1.2(a)(5).

Application note 7 to USSG §5C1.2 states that "[i]nformation disclosed by the defendant with respect to subsection (a)(5) [i.e. the Safety Valve's fifth requirement] may be considered in determining the applicable guidelines range." This rule -- i.e. that relevant conduct disclosed by a defendant during a Safety Valve proffer must be considered in calculating the defendant's sentencing range -- has been upheld against a variety of challenges by every court to consider the question. See, e.g., United States v. Cruz, 156 F.3d 366 (2d Cir. 1998); United States v. Warren, 338 F.3d 263 (3rd Cir. 2003); United States v. Washman, 128 F.3d 1305, 1307 (9th Cir. 1997). These courts typically reason that the purpose of § 3553(f) -- to give deserving "first-time nonviolent drug offenders who played a minor role in the offense" an opportunity to receive a non-minimum-mandatory sentence -- "would be thwarted if defendants could obtain the benefit of the Safety Valve yet not disclose their true roles" or the full extent of their criminal conduct. Washman, 128 F.3d at 1307.

In this case, as set forth in the attached Affidavit of William D. Weinreb, Mr. Kerner contacted government counsel at an early stage of the case to discuss the possibility of a Safety Valve proffer. Government counsel told Mr. Kerner that two

6

mutually corroborating sources with first-hand knowledge had informed the government that Sergio Cruz was involved in distributing at least a kilogram of heroin in addition to the 444 grams that were smuggled into the country by Lorenzo Ozoria. Government counsel noted that, because the additional kilogram of heroin was obtained and distributed by Mr. Cruz in the course of the same conspiracy to which Mr. Cruz had pleaded guilty, Mr. Cruz would be obligated to discuss the additional heroin at any Safety Valve proffer and would then be held accountable for it at sentencing.  Mr. Kerner said that he needed to discuss this information with Mr. Cruz.  Shortly thereafter, Mr. Kerner contacted government counsel again and said that Mr. Cruz wold not be pursuing the Safety Valve.

If Mr. Cruz had given a Safety Valve proffer and thus had disclosed his involvement in obtaining and distributing an additional kilogram of heroin, his base offense level would have been 32 rather than 28, and his total offense level -- even after a two-level Safety Valve reduction pursuant to USSG §2D1.1(b)(7) -- would have been 27, resulting in a sentencing range of 70-87 months.  The low end of that range is significantly higher than the minimum mandatory 60-month sentence Cruz actually received. Cruz's truthful admissions at a Safety Valve proffer might also, moreover, have fatally undermined his argument that he should not receive an upward role adjustment pursuant to USSG §3B1.1, in which case his guidelines sentencing range would have been even

higher.

    B.   <u>Ineffective Assistance of Counsel</u>

To prevail on his claim of ineffective assistance of counsel, Cruz must show (1) that Mr. Kerner's performance was objectively unreasonable and (2) that but for Mr. Kerner's alleged errors, he would have received a lower sentence. <u>See</u> <u>Strickland</u> v. <u>Washington</u>, 466 U.S. 668, 684-85; <u>Knight</u> v. <u>United</u> <u>States</u>, 37 F.3d 769, 774 (1st Cir. 1994). Judicial scrutiny of attorney performance is "highly deferential," and there is a strong presumption that counsel's conduct fell "within the wide range of reasonable professional assistance." <u>Strickland</u>, 466 U.S. at 689; <u>United States</u> v. <u>Soto-Alvarez</u>, 958 F.2d 473, 478 (1st Cir. 1992).

In <u>Harris</u> v. <u>United States</u>, 366 F.3d 593 (7th Cir. 2004), the Seventh Circuit rejected the argument "that counsel's waiver of the safety valve issue *per se* constitute[s] deficient performance" under <u>Strickland</u>. <u>Id.</u> at 596. The defense attorney in that case decided not to pursue the Safety Valve for three reasons, including that "arguing for application of the safety valve might detrimentally expand the record" concerning the defendant's relevant conduct. <u>Id.</u> at 596 & n.3. Because "this was a strategic decision based upon . . . professional judgments made by trial counsel," the Seventh Circuit reasoned, it did not constitute ineffective assistance. <u>Id.</u> at 596.

Here, as in <u>Harris</u>, the uncontradicted evidence indicates

8

that Mr. Kerner's failure to pursue the Safety Valve was a strategic decision based on professional judgments. Mr. Kerner was clearly mindful of the Safety Valve because he contacted government counsel at an early stage of the case to discuss it. After being told of the government's belief that a truthful proffer by Mr. Cruz would involve admitting to the distribution of least an additional kilogram of heroin, and then discussing this information with Mr. Cruz, Mr. Kerner informed government counsel that Mr. Cruz would not be pursuing the Safety Valve. Mr. Kerner is entitled to a strong presumption that he acted reasonably, see Strickland, 466 U.S. at 689, and the facts indicate that the presumption is well-founded in this case. Those facts include Mr. Kerner's vigorous (and successful) advocacy for Mr. Cruz at all phases of the sentencing process. Mr. Cruz, for his part, does not even allege that Mr. Kerner's failure to pursue the Safety Valve was anything other than a strategic decision based on professional judgment; he simply alleges that he was eligible for the Safety Valve and Mr. Kerner did not pursue it. This allegation does not come close to meeting his burden under Strickland's first prong.

Even assuming, moreover, that Mr. Cruz were able to satisfy Strickland's first prong, he cannot show that Mr. Kerner's failure to pursue the Safety Valve prejudiced him. That is because a truthful Safety Valve proffer by Mr. Cruz would likely have increased his sentencing range to at least 70-87 months, as

set forth above. The bottom of this range -- which is the lowest sentence Mr. Cruz could lawfully have received at the time he was sentenced -- significantly exceeds the 60-month minimum-mandatory sentence he actually received. Mr. Cruz therefore cannot satisfy <u>Strickland</u>'s second requirement, either.

Since there are no disputed facts requiring a hearing, and the undisputed facts fail to establish ineffective assistance of counsel, Cruz's motion to vacate, set aside, or alter his sentence should be denied.

Respectfully submitted,

MICHAEL J. SULLIVAN
United States Attorney

By: <u>/s/ William Weinreb</u>
WILLIAM D. WEINREB
Assistant U.S. Attorney

<u>CERTIFICATE OF SERVICE</u>

I, William D. Weinreb, Assistant U.S. Attorney, do hereby certify that I have caused a copy of the foregoing to be served by U.S. mail upon Sergio Cruz, Prisoner No. 24387-038, FCI-Raybrook, P.O. Box 9002, Raybrook, New York 12977, this 1st day of May, 2005.

———————————————
WILLIAM D. WEINREB
Assistant U.S. Attorney

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

SERGIO CRUZ            )
      v.            )   Civil No.  05-10610-NG
                       )
UNITED STATES OF AMERICA )
                       )

**AFFIDAVIT OF WILLIAM D. WEINREB**

I, WILLIAM D. WEINREB, hereby depose and state as follows:

    1.   I am an Assistant U.S. Attorney ("AUSA") in the United States Attorney's Office for the District of Massachusetts. From September 2000 through December 2004, I was assigned to the Organized Crime and Drug Enforcement Task Force, which is responsible for investigating and prosecuting major drug cases.

    2.   I am the AUSA chiefly responsible for prosecuting the case of United States v. Gutierrez-Sanchez et al., Criminal No. 02-10335-NG, in which ten defendants are charged with conspiracy to distribute, and to possess with intent to distribute, heroin, cocaine, and MDMA. One of the defendants is Sergio Cruz, whose real name is Angel Gonzales.

    3.   During the investigation and prosecution of the Gutierrez-Sanchez case, two individuals with first-hand knowledge independently informed the government that Sergio Cruz was involved in obtaining and distributing at least a kilogram of heroin over and above the 444 grams of heroin that he was ultimately held responsible for at sentencing. The additional kilogram of heroin

Case 1:05-cv-10610-NG   Document 4-2   Filed 05/02/2005   Page 2 of 2

was obtained and distributed in the course of the conspiracy by individuals (including Cruz) who were members of the conspiracy.

4. At an early stage of the case, J. Thomas Kerner, Mr. Cruz's attorney, contacted me to discuss the possibility of a Safety Valve proffer. I told Mr. Kerner about the information I had received regarding Mr. Cruz. Mr. Kerner told me that he needed to discuss that information with his client. Mr. Kerner later called me back and said that he had discussed the information with Mr. Cruz and that Mr. Cruz would not be pursuing the Safety Valve. On at least one later occasion, I brought up the subject again with Mr. Kerner, and Mr. Kerner reiterated his judgment that it was in his client's best interests to pursue the Safety Valve. (Mr. Kerner has authorized me to state that this paragraph accurately reflects his recollection of events as well.)

Signed under the pains and penalties of perjury

 /s/ William Weinreb
WILLIAM D. WEINREB
ASSISTANT U.S. ATTORNEY

Date: May 1, 2005